Robert N. GOLD, Charlotte Gold, Sydney Jean Gold and Robert Neil Gold, Appellants (Petitioners),

v.

BOARD OF COUNTY COMMISSIONERS OF TETON COUNTY, Wyoming, and W. Bradley Morehouse and William Rudkin, Co-Trustees, Appellees (Respondents).

No. 5728.

Supreme Court of Wyoming.

Feb. 3, 1983.

Floyd R. King, Jackson, for appellants.

* Chief Justice since January 1, 1983.

** Chief Justice at time of oral argument.

1. The applicable statutes by which the legislature has provided for establishing private roadways are:

"§ 24–9–101. Petition; hearing; appointment of viewers and appraisers, etc.

"Any person whose land shall be so situated that it has no outlet to, nor connection with a public road, may make application in writing to the board of county commissioners of his county at a regular session, for a private road leading from his premises to some convenient public road. Said applicant shall give at least thirty (30) days notice in writing to the owner or resident agent or occupant of all lands over which such private road is applied for, of the time of making such application to such board. If the owner of such land be a nonresident, and there be no resident agent upon which personal service can be had, then such notice may be published in some newspaper published in the county for three (3) weeks, the last publication shall be at least thirty (30) days before the hearing of said application, at which time all parties interested may appear and be heard [sic] by said board as to the necessity of said road, and all matters pertaining thereto. Upon the hearing of said application, whether the owner or others interested appear or not, if the said board shall find that the applicant has complied with the law, and that such private road is necessary, said board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in such order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby, and if for any reason such viewers and appraisers are unable to

Henry C. Phibbs II, Jackson, for appellees Morehouse and Rudkin.

Paul O. Vaughn, Deputy County Atty., Jackson, for appellee Bd. of County Com'rs of Teton County.

Before ROONEY, C.J. *, RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

This is an appeal from an order of the district court affirming the actions of the Board of County Commissioners of Teton County establishing a private road pursuant to §§ 24–9–101 through 24–9–103, W.S. 1977.[1] The appellants, sometimes referred

meet at the time set by the board to view said proposed road, they may fix some other date, but shall be required to give notice in writing to the owner or resident agent or occupant of said lands over which said road is proposed to be laid of the time and place where such viewers will meet, at least ten (10) days before viewing such road, at which time and place all persons interested may appear and be heard by said viewers. Before entering upon their duties such viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their said appointment as viewers and appraisers. Such viewers shall then proceed to locate and mark out a private road in accordance with said application, not exceeding thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, so as to do the least possible damage to the lands through which such private road is located, and they shall also at the same time assess the damages sustained by the owner or owners over which such road is to be established and make full and true returns, with a plat of such road to the board of county commissioners."

"§ 24–9–103. Report of viewers and appraisers; confirmation by commissioners; appeal.

"The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages, and if the commissioners are satisfied that such report is just, and after payment by the applicant of all cost of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private

692

to herein as the Golds, challenge the district court's order of affirmance, and raise for our review the following issues:

1. Did the Board of County Commissioners follow the procedures required by §§ 24–9–101 through 24–9–103 in permitting the establishment of the private road?

2. Are the statutes permitting the establishment of private roads unconstitutional?

3. Was the road in question properly designated as a private road?

4. Is reversal of the Board's order warranted because one of the members was directly interested in the outcome by virtue of her ownership of neighboring property?

We will affirm.

## FACTS

On January 2, 1980, an application was submitted to the Board of County Commissioners of Teton County requesting the establishment of a private road. The application was offered by W. Bradley Morehouse and William Rudkin as co-trustees, for a parcel of land held for the benefit of Dorothy Smith Rudkin, Henry Rudkin III and Margaret Mercedes Rudkin.[2]

The application alleged that the parcel in question was landlocked, with no legally enforceable means of access to a public road. It then went on to designate several proposed roadways which could be established to provide access. The suggested road options traversed either the property of the Golds or the property of Bernard Reitmann, another neighboring landowner.

On May 6, 1980 the Board conducted a hearing at which the applicants called a professional abstractor who testified that a search of county records failed to produce any record access from a public road to the subject property. Another witness testified

to the suitability of the proposed road. The contestants called Mr. Robert Gold, who testified that he had been told by the grantor of applicants' property that an easement had previously been granted and later abandoned by applicants. However, no documentary evidence supporting this testimony was offered or admitted into evidence. Several other witnesses testified for the contestants, but this evidence mostly focused on the difficulty associated with the upkeep of the existing road on the Gold's property during the winter months. When the evidence was in, the Board took the matter under advisement.

On May 20, 1980, the Board entered an order granting the application and appointing appraisers for the purpose of laying out the road and assessing damages. Specifically, the Board resolved:

"1. That the application of W. Bradley Morehouse and William Rudkin, Co-Trustees, for the establishment of a private road was filed on the 14th day of January, 1980, and that said application fully conforms to the requirements of law, to-wit Section 24–9–101 through 24–9–103, Wyoming Statutes, 1977.

"2. That the applicants are owners of record of a parcel of property approximately 10 acres in area which has been subdivided into 3 tracts; each tract being beneficially owned by the beneficiaries of the three trusts of which the applicants are Co-Trustees.

"3. That the application sets out two, alternative, proposed private roads which would provide access from the property held by the applicants to a public road, Wyoming State Highway 22,

"4. That one of the proposed routes traverses a parcel of property owned by Robert Gold and Charlotte Gold as well as an adjoining parcel owned by their children Sydney Jean Gold and Robert Neil Gold, utilizing an existing roadway for all

road, and the same shall be recorded as such. Any person aggrieved by the action of the board or as to the amount of damages awarded, may appeal to the district court at any time within thirty (30) days after said road is

finally established by said board of county commissioners."

2. In 1977 the parcel had been subdivided into three separate tracts with one tract being held for each of the beneficiaries of the trust.

but approximately 50 feet of the proposed road.

"5. That the other, alternative, proposed route traverses the parcel owned by Sydney Jean Gold and Robert Neil Gold using the lower portion of said existing roadway and then progresses in a northeasterly direction traversing property in the general area of the boundary line between the Sydney Jean Gold and Robert Neil Gold parcels and a parcel owned by Bernard Reitman.

"6. That the Board of County Commissioners set a hearing on the application for March 4, 1980, at 1:30 p.m. That notice of the March 4, 1980 hearing was served on the persons over whose lands the private road was proposed, Robert M. Gold, Charlotte Gold, Robert Neil Gold and Sydney Jean Gold, through direct service on behalf of all family members on Sydney Gold, and through service by certified mail to Robert M. Gold for all family members, and through direct service on Bernard Reitman, all of which service was completed more than thirty (30) days prior to the March 4th hearing date set by the Board of County Commissioners. Evidence of said service was submitted to and received by the Board from Henry C. Phibbs II, attorney for applicants.

"7. That notice of the application and hearing date was published in a newspaper of general circulation in Jackson, Wyoming on January 16, January 23 and January 30, 1980, and proof of publication of said notice was submitted to the Board by Henry C. Phibbs II, attorney for applicants.

"8. That the hearing scheduled for March 4, 1980, was, at the request of the individuals over whose lands the private road was proposed, rescheduled to May 6, 1980 at 1:30 p.m.

"9. That all interested parties were served adequate notice, as required by § 24–9–101 W.S.1977.

"10. That the land of the applicants is so situated that it has no outlet to nor connection with public road nor any legally enforceable means by which the applicants can gain access to a public road.

"11. That Wyoming State Highway 22 is a convenient public road.

"12. That the two alternative proposed routes set forth in the application were proposed in good faith, are specified with sufficient particularity and that such routes are reasonable.

"13. That the applicants have complied with the requirements of § 24–9–101 W.S.1977, and that the establishment of a private road is necessary and, therefore, they are entitled to have a private road established by the Board of County Commissioners of Teton County."

On June 25, 1980, the appointed appraisers met at the site of the subject properties for the purpose of deciding upon the course of a roadway and to assess damages. The next regularly scheduled meeting of the Board was convened on July 1, 1980, and was regularly continued to July 8, 1980.[3] The minutes of the July 8 meeting reflect that the appraisers' report was presented to the Board, at which time it was reviewed and approved. A written order of confirmation was issued by the Board on August 4, 1980 and it is from this order that the Golds appealed to the district court and, from an adverse decision there, now appeal to this court.

### THE ISSUES RESOLVED

Appellants' principal contentions have to do with their claim that the procedures mandated by §§ 24–9–101 through 24–9–103, supra n. 1 have not been followed—all to their detriment and disadvantage. The district court rejected these contentions and we agree.

■ First of all, the Golds urge that the application filed by the co-trustees was defective in that it failed to designate the desired access road with sufficient specifici-

---

**3.** The transcript from the district court proceeding reflects that appellant's counsel attend-

ed a portion of the meeting but chose not to object.

ty. According to appellants, the application merely describes a desire for a way across the Gold's property and wrongfully places the burden of selecting the proper route upon the appraisers. They go on to say that our holding in *McGuire v. McGuire,* Wyo., 608 P.2d 1278 (1980),[4] requires reversal because the application did not meet the standards we developed in that opinion. We cannot agree.

In *McGuire v. McGuire,* supra, we construed § 24-9-101 as requiring a proposed roadway to be designated with some specificity. In concluding that the petitioner in *McGuire* had failed to file a proper application we said:

" * * * The first thing the appellants had to do was petition the county commissioners for a private road 'leading from his [their] premises to some convenient public road.' The applicant complied with the notice requirements. It appears plain in the statute that the applicant must ask for the road with some specificity because the viewers are to 'meet on a day named * * * *on the proposed road,* and view and locate a private road *according to the application* therefor.' [Emphasis in text.] The appellees merely said they wanted a road and gave notice to two parties and suggested that the road should go over the lands of one or the other but appellees did not know which, saying that was up to the viewers. *The statutory language requires the applicants to set out a description of the road it proposes.* [Emphasis added.]" 608 P.2d at 1285.

In applying this requirement to the facts of this appeal, we cannot say that the Board abused its discretion when it found the application to be in compliance. The applicants specifically set forth several alternative roads to be established either across the appellants' property or that of Mr. Reitmann. In this regard, the agency and the trial court found that the *McGuire* rule of specificity had been complied with. We

also agree with the Board's conclusion that there was sufficient evidence to establish that the application complied with § 24-9-101, W.S.1977.

The next contention raised by the Golds speaks to an assertion that the applicants failed to show "necessity" as required by law and the Board erred in concluding otherwise. We disagree.

In *McGuire v. McGuire,* supra, we discussed the statutory requirement of "necessity" as follows:

" * * * We agree with the district judge that the county commissioners' finding that the road was not 'necessary' was unsupported by the evidence. The evidence clearly demands the opposite conclusion. *We hold that any person whose land is so situated that it has no outlet— no legally enforceable means by which he can gain access—has demonstrated necessity, as a matter of law, without there being a further need to show that he lives on that land or that it is being, or will be, used for some specific purpose nor was it proper to inquire into impact on adjoining owners* (other than the owners whose land will be taken), *financial interest of applicants, use for hunting, fences and improvements, or whether permissive access had been denied. In our view, the word 'necessary' in the statute refers only to the lack of the type of outlet we have described to a 'convenient' public road."* (Emphasis added.) 608 P.2d at 1286.

This rule was reiterated in *Walton v. Dana,* Wyo., 609 P.2d 461 (1980).

Appellants urge that even though the applicants were able to establish that they had no *record* access to their property, Mr. Gold's testimony concerning an alleged easement that was abandoned was sufficient to require the Board to conclude that applicants had failed to meet their burden of establishing no legally enforceable means of access. A review of the record does not

---

4. In their brief, the appellants have requested us to overrule our recent decisions in *McGuire v. McGuire,* supra, and *Walton v. Dana,* Wyo., 609 P.2d 461 (1980). A review of those decisions leads us to the conclusion that they re-

flect the correct rules of law, and we therefore decline the invitation to overrule them and consider the results reached therein to be controlling here.

support appellants' argument. It is clear to this court that the Board was correct in finding that the requested road was necessary in light of testimony which showed that there was no record of any easement or other enforceable means of access. The testimony relied upon by appellant was mostly hearsay and none of the documents which were relied upon to establish an easement were offered or admitted. Furthermore, appellants failed to establish that the application was not brought in good faith. *McGuire v. McGuire,* supra, 608 P.2d at 1286.

■ We are guided by the rule which holds that in reviewing appeals from administrative bodies we are in the same position as the district court, *Wyoming State Department of Education v. Barber,* Wyo., 649 P.2d 681 (1982); *Spivey v. Lucky Mc Uranium Corp.,* Wyo., 636 P.2d 518 (1981), and we cannot substitute our judgment for that of the agency as long as the decision is supported by substantial evidence. *Spivey v. Lucky Mc Uranium Corp.,* supra, 636 P.2d at 521; *Board of Trustees of School District No. 4 v. Colwell,* Wyo., 611 P.2d 427, 428 (1980). Under the present circumstances, the Board's finding of necessity is clearly supported by substantial evidence and we cannot therefore substitute our judgment for that of the agency. Applicants' land is so situated that it has no outlet and no legally enforceable means of access and thus necessity was established as a matter of law.

Having expressed disagreement with the actions of the appraisers, the appellants go on to charge that they were denied due process because they were not offered the opportunity to challenge the appraisers' report. They also allege that § 24–9–103,

W.S.1977, was not complied with because the report was not submitted at the next regularly scheduled meeting of the Board. In other words, the contention is that the report was not presented at the July 1, 1980 meeting but rather on July 8, 1980. We cannot agree with either of these positions.

■ We find the argument that the presentation of the report on July 8, 1980 violated § 24–9–103 to be without merit[5] because the minutes of the Board's meetings reflect that such a meeting, as is required by statute,[6] was convened on July 1, 1980, and by unanimous vote was continued to July 8, 1980, at which later meeting the report was presented and adopted. Appellants have failed to cite any authority which would indicate that the Board lacked the ability to continue the meeting, and we fail to see how the presentation of the report on July 8, 1980, in any way violated § 24–9–103. There was no record showing that the continuance was intended for the purpose of permitting the appraisers to complete their report, as the appellants suggest, but, on the other hand, the record establishes that the meeting was continued because of the heavy volume of business before the Board on the 1st of July.

■ Furthermore, we are of the opinion that the Golds cannot be heard to successfully complain that they failed to receive due process. Although § 24–9–103 does not specifically provide that the Board shall conduct a hearing on the appraisers' report, a reading of the statutes tells us that the legislature intended that a hearing be conducted. We agree with appellants that a due-process hearing is required because, considering the property rights involved, due process demands that the affected land-

5. We also find the appellants' argument to the effect that the proposed road cannot be characterized as a private road to be without merit. We pointed out in *McGuire v. McGuire,* 608 P.2d at 1288, that a "public road" is one that the public generally is privileged to use. Given this definition, the road in question cannot be regarded as anything but a private road, and the fact that it is to be used to access one of these small tracts does not take it out of the latter category.

6. Section 18–3–502, W.S.1977, provides:
"Each board of county commissioners shall meet at the county seat of their respective counties on the first Tuesday in each month or at such other times as may be designated by resolution of the board or when it is necessary to meet for the transaction of urgent county business."

owner have the right to contest the taking and the damage awards determined by the appraisers. *Board of County Commissioners of Teton County v. Teton County Youth Services, Inc.,* Wyo., 652 P.2d 400 (1982). It is, thus, incumbent upon the agency to give the affected party notice of the time when the matter is to be considered so that he may be heard. Section 16–3–107(a), W.S. 1977 (October 1982 Replacement); *White v. Board of Trustees of Western Wyoming Community College District,* Wyo., 648 P.2d 528 (1982). Here, not only did the Board in fact conduct a hearing, but it is further to be noted that § 24–9–103, by specific language, incorporates the notice requirement by directing that the appraisers' report would be considered at the Board's "next regular session." Section 24–9–103, supra n. 1. The problem in this case is that, for some reason, appellants failed to appear at the July 8, 1980 meeting which was, as we have said, a continuance of the July 1st "next regular session" or, if they did appear, they did not lodge an objection to the report. Appellants, however, make no claim that they were not aware of the July 1, 1980 meeting and its continuance to July 8, 1980. Under such circumstances, they cannot now be heard to complain that they were denied due process. The record clearly reflects the Board provided them with an opportunity to be heard—of which opportunity they did not avail themselves; or, at the very least, the record fails to evidence any denial by the Board of an opportunity to challenge the appraisers' report. Appellants, having been given the opportunity, failed to object and they cannot now be heard to successfully complain. We hold that § 24–9–103 provides for procedures consistent with concepts of due process, and the Board, in this case, did not in any way violate these rights of the appellants.

Finally, with respect to the appellants' assertions of bias and conflict on the part of one of the county commissioners, the record shows that the appellants did not raise this objection before the Board considered the application. Although members of administrative bodies must be fair and impartial, *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976); *Fallon v. Wyoming State Board of Medical Examiners,* Wyo., 441 P.2d 322 (1968), the party claiming bias, prejudice or possible conflicting interest must raise these complaints prior to the agency's consideration of the dispute. Thus, even though' we held in *Lake De Smet Reservoir Company v. Kaufmann,* 75 Wyo. 87, 292 P.2d 482, 485 (1956), that an administrative official who finds himself interested either directly or indirectly in a dispute is under an obligation to remove himself, we qualify that by requiring the party who feels aggrieved to lodge his or her objection when knowledge of facts indicating bias, prejudice or conflict of interest arise. See: 3 Davis, Administrative Law Treatise, § 19.10, p. 405 (2d ed. 1980). Such a requirement is no more restrictive than that which we require with respect to challenges of judges pursuant to Rule 40.1(b)(2), W.R.C.P. In addition, appellants have failed to show how the alleged bias or interest of the commissioner in any way affected the outcome of the dispute or denied them a right to a fair hearing. Absent such a showing, we will not reverse. *State Board of Education v. Barber,* supra.

We therefore reject all of appellants' claims and affirm the order of the district court which, in turn, affirmed the actions of the Board of County Commissioners of Teton County.

Affirmed.

ROONEY, Chief Justice, dissenting, with whom BROWN, Justice, joins.

I dissent. In doing so, I can only direct attention to my dissents in *McGuire v. McGuire,* Wyo., 608 P.2d 1278 (1980), and in *Walton v. Dana,* Wyo., 609 P.2d 461 (1980), in which Justice McClintock joined. It was there established that §§ 24–9–101 through 24–9–103, W.S.1977, were superseded by the Wyoming Rules of Civil Procedure, and that such statutes would not pass constitutional muster even if they were viable. As there pointed out (at page 1294 of 608 P.2d), the last word from the legislature, in 1977,

relative to eminent domain, was specific and plain:

> " '*Any action or proceeding* to acquire title to or any interest in real or personal property of another by condemnation, *for any purpose whatsoever,* shall be commenced and conducted in accordance with Wyoming Rules of Civil Procedure.' (Emphasis supplied.) Section 1–26–405, W.S.1977."

This action and proceeding was subject to the direction contained in § 1–26–405, W.S. 1977, but it was not conducted in accordance with the Wyoming Rules of Civil Procedure.

I would remand with direction to vacate both the order appealed from and the decision of the Board of County Commissioners without prejudice to institute proper proceedings under Rule 71.1, W.R.C.P., for the purpose of obtaining an alleged private way of necessity.