**Steve and Esther MILLER, Appellants (Petitioners),**

v.

**Janis K. BRADLEY, Appellee (Petitioner).**

**Robert and Marie Burkhalter, Appellants (Petitioners),**

v.

**Janis K. Bradley, Appellee (Petitioner).**

**Board of County Commissioners of Fremont County, Appellants (Respondent),**

v.

**Janis K. Bradley, Appellee (Petitioner).**

Nos. 99–4, 99–5, 99–6.

Supreme Court of Wyoming.

April 27, 2000.

Representing Appellants Miller: William L. Miller of Miller & Fasse, P.C., Riverton, WY;

Representing Appellants Burkhalter: M.L. Barton of M.L. Barton, P.C., Riverton, WY;

Representing Appellant Board of County Commissioners: Norman E. Young, Fremont County and Prosecuting Attorney. Argument by Messrs. Miller, Barton and Young.

Representing Appellee: Andrew W. Baldwin of Baldwin & Crocker, P.C., Lander, WY. Argument by Mr. Baldwin.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

This is an appeal from a district court order reversing an order of the Board of County Commissioners of Fremont County and requiring reinstatement of an earlier order by the Board which established a private road in Fremont County. We affirm the district court order and remand to the district court with directions to remand to the Board of County Commissioners for reinstatement of its original order and an assessment of damages.

## ISSUES

All parties raise the following issue:

1. Whether the district court erred in holding that Bradley's land does not have an outlet or a connection with a public road.

The Millers raise the following additional issue:

2. Whether the district court erred in holding that the United States is not a necessary and indispensable party to this action.

The Burkhalters raise the following additional issues:

3. Whether Bradley properly gave notice of her petition to establish a private road to all affected landowners;

4. Whether the Fremont County Board of Commissioners correctly determined damages;

5. Whether a road dedicated within a subdivision but privately maintained and restricted in use is a "public road" for purposes of W.S. § 24–9–101.

Bradley raises the following additional issues:

6. Whether the Burkhalters have standing to challenge an alleged injury to the rights of others;

7. Whether the findings on damages may be challenged for the first time on appeal and are clear error;

8. Whether the Board of County Commissioners has standing to appeal when it did not appear in the District Court proceeding;

9. Whether she is entitled to costs and attorney's fees pursuant to W.R.A.P. Rule 10.05.

### FACTS

On November 25, 1996, Bradley filed a petition for a private road with the Board of County Commissioners of Fremont County pursuant to Wyo. Stat. Ann. § 24–9–101 (Lexis 1999). In the petition, Bradley alleged that she was the owner of a landlocked parcel of land located in Fremont County having no outlet to, or connection with, a public road. Bradley further alleged that the most convenient access to her land was across Eagle Road, a public road which passes through the Mile High Subdivision, continues north as a private road on the western boundary of property owned by the Millers and Burkhalters, and ends at the southern boundary of Bradley's property. Bradley sought the establishment of the northern portion of Eagle Road as a private road leading from her land to the public portion of Eagle Road.

On February 18, 1997, the Millers filed a motion to dismiss Bradley's petition for fail-ure to join the United States as an indispensable party. The Millers alleged that the land Bradley claimed to own was held in trust by the United States and argued that, as trustee, the United States was a necessary party to the action. The Board of County Commissioners denied the motion and, on April 1, 1997, issued Findings of Fact and Conclusions of Law in which the Board concluded that Bradley had no legally recognized or enforceable outlet to or connection with a public road and that a private road was necessary. The Board further concluded that Eagle Road was the most convenient access to Bradley's property. The Board ordered the appointment of viewers and appraisers to view and locate a private road and assess any damages.

The viewers and appraisers met at the site on September 4, 1997, as ordered by the Board and, on October 20, 1997, submitted a report to the Board in which they concluded that Eagle Road was the most convenient access to Bradley's property and that the establishment of the northern portion of Eagle Road as a private road would cause no injury to the surrounding landowners.

On October 31, 1997, the Millers filed an objection to the report. A hearing was held on November 4, 1997, at which time the Board heard objections from interested parties. On January 13, 1998, the Board issued an order reversing its earlier order and denying Bradley's petition for a private road. The Board found that the lands adjoining Bradley's property to the west and south are, like her land, held in trust by the United States over which the Secretary of Interior is empowered to grant rights-of-way and that Bradley could seek a right-of-way from the United States. Therefore, the Board concluded, Bradley had failed to show her land had no legally enforceable outlet to or connection with a public road or that a private road was necessary.

On January 26, 1998, Bradley filed a petition for review in the district court pursuant to Wyo. Stat. Ann. § 16–3–101 et seq. and W.R.A.P. 12. On February 13, the Burkhalters and Millers also filed petitions for review in the district court. The district court con-

solidated the petitions, heard argument on August 19, and issued an order on November 11 finding that Bradley's land has no outlet to or connection with a public road and that Bradley is not required to seek a right-of-way across the adjacent U.S. government lands before applying for a private road pursuant to § 24–9–101. The district court reversed the January 13 order of the Board of County Commissioners and ordered reinstatement of the Board's earlier order. The Millers, Burkhalters and Board of County Commissioners timely appealed the district court order.

## STANDARD OF REVIEW

In reviewing appeals from agency action, we are in the same position as the district court; we cannot substitute our judgment for that of the agency as long as the decision is supported by substantial evidence. *Gold v. Board of County Comm'rs of Teton County,* 658 P.2d 690, 695 (Wyo.1983). Our task is to examine the entire record to determine whether substantial evidence supported the agency's findings of facts. *Dunning v. Ankney,* 936 P.2d 61, 63 (Wyo.1997). No deference is given to an agency's conclusions of law. *Martens v. Johnson County Board of Comm'rs,* 954 P.2d 375, 379 (Wyo.1998). If the agency has not invoked and properly applied the correct rule of law, we are obligated to correct the error. *Id.*

## DISCUSSION

### Outlet to or Connection with Public Road

The Millers, Burkhalters and Board of County Commissioners contend that the district court erred in finding that Bradley has no outlet to or connection with a public road. In essence, their argument is that the Bradley property and the adjoining property to the west and south are owned by the same entity (the United States); the adjoining property is connected to a public road (Riverview Road); Bradley has the ability pursuant to 25 U.S.C. § 323 to seek a right of way from the Secretary of the Interior across the adjoining federal lands to Riverview Road; therefore, Bradley is not entitled to the establishment of a private road under Wyo. Stat. Ann. § 24–9–101.

Section 24–9–101 provides in pertinent part as follows:

Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. * * * [I]f the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. * * * The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate * * *. The proposed road * * * shall be located so as to do the least possible damage to the lands through which the private road is located.

In applying this statute, we have held that the language of the provision must be given a sensible construction and that convenience and reason should prevail in establishing private roads. *McGuire v. McGuire,* 608 P.2d 1278, 1286 (Wyo.1980); *Lindt v. Murray,* 895 P.2d 459, 462 (Wyo.1995). We have said that the statute was intended to provide a procedure whereby a landowner could obtain access to his property in a readily available, economically affordable, and time efficient manner. *McGuire,* at 1288.

We have construed the statute to mean that any person whose land is so situated that it has no outlet, that is, no legally enforceable means by which he can gain access, has demonstrated necessity as a matter of law. *Id.* at 1286. We have also said that necessity is established under § 24–9–101 where a petitioner has no presently existing outlet to or connection with a public road. *Walton v. Dana,* 609 P.2d 461, 463 (Wyo. 1980).

■ We have held that there is no requirement in § 24-9-101 that a petitioner for a private road must overcome every obstacle standing in his way, regardless of the expense and impracticability. *Walton,* 609 P.2d at 463 Thus, we have held that a petitioner cannot be compelled to pursue a claim of common law way of necessity before he may seek relief under § 24-9-101. *Id.; but see Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991) (making clear that a civil action for a common law way of necessity is not available because of the existence of § 24-9-101). In the same vein, we have held that the potential remedy of an implied easement is not relevant to the determination of whether a private road is necessary. *Lindt,* 895 P.2d at 462-63. Section 24-9-101 contains no requirement that other forms of relief be pursued prior to seeking the relief available under its provisions. *McGuire,* 608 P.2d at 1286; *Walton,* 609 P.2d at 463; *Lindt,* 895 P.2d at 462.

Here, although it was not required, the petitioner did seek other relief prior to filing a petition for a private road pursuant to § 24-9-101. In February of 1996, Bradley filed an action in district court for determination of whether a federal easement existed on Eagle Road. The outcome of that action was an order from the district court ruling that no federal or implied easement under state law existed and that Bradley's remedy was before the Board of County Commissioners under § 24-9-101. In accordance with that order, Bradley filed her petition seeking the establishment of a private road.

Given the procedural history of this case, a holding by this court requiring Bradley to seek relief from the Secretary of Interior under the federal statutes would frustrate the purposes of § 24-9-101; reason and convenience would not prevail from such a holding. That other relief may be available to Bradley under the federal statute is not relevant to her right to proceed under the Wyoming statute. She has no *presently existing* outlet to or connection with a public road and was entitled to seek relief under § 24-9-101.

### United States as Necessary or Indispensable Party

The Millers argue that the United States, as trustee of the lands held by Bradley, is a necessary and indispensable party to this action. Rule 19 of the Wyoming Rules of Civil Procedure governs the joinder of persons needed for a just adjudication. In determining whether joinder is required, a court must first determine if the person in question meets the criteria contained in Rule 19(a). *Lamb v. Wyoming Game and Fish Comm'n,* 985 P.2d 433, 439 (Wyo.1999). Section (a) of Rule 19 provides:

(a) *Persons to be joined if feasible.*—A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If these criteria are met, the person is to be joined if feasible. *Lamb,* at 439. In cases where joinder is not feasible, the court must then determine whether, in equity and good conscience, the action should proceed with the parties before it or be dismissed based upon consideration of the four factors identified in Rule 19(b). *Id.*

■ We conclude that the criteria contained in Rule 19(a) have not been met. Contrary to the Millers' claim, we find that, on the narrow issue presented, complete relief can be accorded among the parties before the court without the joinder of the United States. Unlike the authorities cited by Miller, this is not a case in which title to the Bradley property is at issue. If such were the case, dismissal likely would be warranted absent the United States as a party. At issue here, however, is the trust beneficiary's right of access to the trust property. This issue can be adequately addressed, and com-

plete relief can be afforded, in an action between the beneficiary and the landowners across whose property access is sought.

■ Our inquiry does not end there, however. Rule 19(a) alternatively provides that joinder is required if the person claims an interest relating to the subject of the action and his absence may impair his ability to protect that interest or may leave a party to the action subject to a substantial risk of double, multiple or inconsistent obligations. While recognizing the United States may have an interest in the technical sense as owner of the Bradley property, we do not find as a practical matter that its interest is subject to being impaired in this action. No party is seeking to establish a private road across lands held in trust by the United States, so its interest will not be impaired in that way. Nor do we see how the establishment of a private road providing access to the federal trust land for the benefit of the beneficiary will impair or impede the government's interest. Likewise, we do not see a substantial risk that double, multiple, or inconsistent obligations may be imposed upon any of the existing parties in the absence of the United States as a party. While the Millers are correct that the outcome in this case is not binding on the United States in its absence, we must examine practical, not merely legal, effects of allowing the action to go forward. *Lamb,* 985 P.2d at 439. In this case, it seems highly unlikely that the United States would have reason in the future to challenge a ruling establishing access to federal trust lands across non-federal lands for the benefit of its beneficiary.

Under the particular facts of this case, the United States is not "a person needed for just adjudication" within the meanings of W.R.C.P. 19, and the motion to dismiss for failure to join an indispensable party was properly denied.

### Notice to Affected Landowners

The Burkhalters claim that Bradley failed to give notice to all affected landowners as required by § 24–9–101. Bradley counters this argument by claiming that the Burkhalters are not alleging they personally failed to receive notice and do not have standing to appeal that issue on behalf of other non-

party landowners. We will address the merits of the Burkhalters' claim.

■ Bradley gave notice to the owners of the property which the proposed route crosses. The Burkhalters contend notice should have been provided to all landowners within Mile High Subdivision because they will all be affected by Bradley's proposed use of Eagle Road due to increased traffic. The plain language of § 24–9–101 requires a petitioner to "give notice in writing to the owner, resident agent or occupant of all lands over which the private road is applied for." The statute does not require a petitioner to give notice to all landowners who might be affected by the proposed road. Bradley gave notice as required by § 24–9–101. We will not expand the plain language of the statute to encompass requirements beyond those clearly set out by the legislature. *Dunning,* 936 P.2d at 64–65; *McGuire,* at 1287.

### Damages

The Burkhalters claim that the Board of County Commissioners incorrectly determined the damages which would result from the proposed road. Specifically, they claim there was no comparison made of the value of adjoining lands before establishment of the road and the value of those lands after the road was established as required in *Lindt,* 895 P.2d at 463. Bradley argues that because the Burkhalters raised the damage issue for the first time on appeal to this court, it should not be considered.

■ The record reveals that neither the Board of County Commissioners' order nor the district court order includes a determination as to damages. The only determination made with respect to damages was that contained in the report of the viewers and appraisers. That report is not a final order susceptible to review by this court or the district court. We, therefore, remand to the district court, with directions to remand to the Board for an assessment of damages.

■ Because it is unclear from the record before us how the viewers and appraisers arrived at their assessment of damages, we emphasize that any damages must be assessed in accordance with *Lindt v. Murray,* 895 P.2d 459, 463 (Wyo.1995). That is, the viewers and appraisers must: first, deter-

mine the value of the property over which the road crosses before the private road is established; second, determine the value of the property over which the road crosses after the private road is established; and third, subtract the "after" value from the "before" value, which equals the damages due the owners of land over which the road crosses. In applying this formula, the viewers and appraisers are to determine the "before" and "after" value only of those lands over which the private road crosses; not, as the Burkhalters argue, the "before" and "after" value of all surrounding lands affected by the proposed road. If application of the *Lindt* formula confirms the viewers' and appraisers' earlier conclusion that no damages are due the landowners, that is permissible under § 24–9–101.

### Public Road

The Burkhalters claim that Eagle Road is not a public road for purposes of § 24–9–101. They argue that it is really a private road which is privately maintained by and for the use of residents of Mile High Subdivision. There is no question from the record that Eagle Road is a public road as it passes through Mile High Subdivision. From there, it continues north as a private road passing along the western boundary of the Burkhalter and Miller properties, and ending at the south end of the Bradley property.

Section 24–9–101 provides a means for a landlocked landowner to apply for a private road leading from his property to "some convenient public road." The "convenient public road" to which Bradley seeks a connection is the public portion of Eagle Road which passes through Mile High Subdivision. There is no support in the record for the Burkhalters' assertion that the portion of Eagle Road which passes through Mile High Subdivision is not a public road within the meaning of § 24–9–101.

### Board of County Commissioner's Right to Appeal

Bradley claims that the Board of County Commissioners is precluded from ap-

pealing the district court order to this court by its failure to file an appeal with the district court. The Board of County Commissioners is not a "person" as defined by the relevant statutes. *See Brandt v. TCI Cablevision of Wyoming,* 873 P.2d 595 (Wyo.1994); *Basin Electric Power Co-op., Inc. v. Dep't of Rev.,* 970 P.2d 841 (Wyo.1998); W.R.A.P. 12.01. Therefore, that board could not appeal to the district court and cannot be scored for its failure to do so. Additionally, as a practical matter, the Board of County Commissioners has no reason to appeal to the district court from its own decision—we assume it is not "aggrieved or adversely affected" by it own decision. *See* W.R.A.P. 12.01. However, an "aggrieved *party* may obtain review of any final judgment of the district court by appeal to the supreme court." W.R.A.P. 12.11; *Safety Medical Servs., Inc. v. Employment Security Comm'n,* 724 P.2d 468, 471 (Wyo.1986); W.R.A.P. 12.11. Because the Board of County Commissioners was a proper party[1] below, it is not precluded from appealing the district court order to this court.

### Costs and Attorney Fees

Citing W.R.A.P. 10.05, Bradley seeks her costs and attorney fees in responding to this appeal. To warrant taxing of costs and attorney fees under Rule 10.05, we must certify that there was no reasonable cause for the appeal or that appellants' arguments are specious and frivolous and lack cogent argument. W.R.A.P. 10.05; *Osborn v. Pine Mountain Ranch,* 766 P.2d 1165, 1167–68 (Wyo.1989). We are not willing to make that certification in this case.

### CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion.

---

1. The Board of County Commissioners is a proper party in the action before the district court because it acts as a "regulatory" body, not as an "adjudicative" body, under the private road stat-

ute. *See Antelope Valley Improvement Dist. v. Board of Equalization* [Clarification], 2000 WL 365086, 4 P.3d 876 (Wyo.2000).